UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANAMA-BUENA VISTA UNION SCHOOL DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>A.V., a minor, by and through his parent CONCEPCION VARELA,<br><br>Defendant. | No. 1:15-cv-01375-MCE-JLT<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff Panama-Buena Vista School District ("District") challenges determinations made by the Office of Administrative Hearings ("OAH") in a non-expedited special education due process hearing conducted in accordance with the provisions of the Individuals with Disabilities Education Act., 20 U.S.C. § 1400, et seq. ("IDEA"). In that proceeding, Defendant A.V. ("A.V."), by his parent and guardian ad litem, Concepcion Varela ("Defendant's mother" or "Ms. Varela"), takes issue with various actions taken by the District with respect to A.V.'s educational placement.

A.V. has already pursued two special education "due process" proceedings to rectify what he alleges were unlawful steps taken by the District against him. In A.V., et al., v. Panama-Buena Vista Union School District, No. 1:15-cv-00246-MCE-JLT

1

("Related Case"), A.V. appeals adverse decisions rendered by the OAH with respect to those proceedings. A.V's appeal encompasses, in addition to IDEA violations, violations of § 504 of the Rehabilitation Act of 1973, 29 U.SC. § 701 et seq. ("Section 504") as well as claims for discrimination and retaliation on the basis of disability and national origin under both Section 504 and Title II of the Americans with Disabilities Act. The District, in turn, through the present action, appeals decisions made by the OAH hearing officer in A.V.'s favor.[1]

Currently before the Court is the District's motion to reverse certain portions of the OAH's August 28, 2015, decision which found that the District violated the IDEA by failing to assess A.V. for eligibility for special educational services between August 18, 2014, and October 6, 2015. That motion is made on grounds that the OAH's decision is not justified by the facts presented or by applicable law. As set forth below, the District's Motion is GRANTED.[2]

## BACKGROUND[3]

Defendant's mother enrolled A.V. at the District's Stonecreek Junior High School prior to the first day of the 2014-15 school term. A.V. was twelve years old at the time of that enrollment. On August 18, 2014, the first day of school, Ms. Varela provided the District with a copy of A.V.'s most recent Section 504 plan along with a behavior support plan from the Bakersfield City School District ("BCSD") where A.V. had previously attended classes. The Section 504 and behavioral support plans were apparently

---

[1] The District's appeal was related to A.V.'s earlier appeal enumerated above by a related case order filed January 13, 2016. ECF No. 19.

[2] Having determined that oral argument was not of material assistance, the Court ordered this Motion submitted on the briefs in accordance with Local Rule 230(g).

[3] The facts in this section are derived from the allegations set forth both in the District's Complaint and the Second Amended Complaint in the Related Case, as augmented by the Administrative Record for both the expedited and non-expedited proceedings. Citations to the Expedited Hearing Administrative Record made herein are denoted as "E-AR".

2

developed given A.V.'s medical diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD").

A.V. began to have behavioral incidents at school as early as August 21, 2014, just three days after classes commenced. He was referred to the office that day for provoking a fight with another student and for being combative. The District requested A.V.'s student records from BCSD that day, and those records were obtained on September 5, 2014. The records showed a history of multiple incidents during the preceding school year that required discipline, including suspensions. E-AR 369-97. BCSD conducted a psychoeducational evaluation of A.V. between February and April of 2013 and assessed his cognitive, academic, and social/emotional functioning. See Related Case, ECF No. 96-3. The report concluded that A.V. had average intelligence, that his academic abilities ranged from average to high average, and that he was unlikely to be autistic. Id. at p. 25. The report further concluded that although A.V. had "an apparent disorder in one or more of the basic psychological processes," that disorder did not hinder his ability "to acquire academic skills and function in a general education classroom." Id. BCSD thereafter convened an Individualized Education Program ("IEP") meeting to consider and discuss the results of the psychoeducational assessment and to determine whether A.V. was eligible for special education and related services. Id. The IEP team concluded that A.V. was not eligible. Related Case, ECF 96-4 at p. 6.

On August 27, 2014, A.V. allegedly threatened to injure another student at Stonecreek and was also purported to have bullied, intentionally harassed and intimidated a group of students. This caused the District to suspend A.V. for two days. That same day, however, the District held a Section 504 team meeting and developed a Section 504 Accommodation Plan for him. Ms. Varela attended the meeting with the assistance of a Spanish interpreter provided by the District and accompanied by an educational advocate. At that time, the District believed that A.V.'s behaviors could be addressed through accommodations in his Section 504 plan, and Plaintiff's mother consented to the District's proposals in that regard. In addition, the District presented

and explained a general education behavior contract to Ms. Varela and to A.V., which they signed and understood. Ms. Varela did not indicate at this time that her son had any disability that would interfere with his ability to comply with the contract. There is also no indication that she asked for a referral for special education at that time.

Despite A.V.'s behavior contract he was referred to the office twice on September 3 and 4, 2014, for poor attitude and profanity. In addition, on September 5, 2015, A.V. received five days of lunch detention for showing disrespect to another student. Then, on September 11, 2014, after the District intervention counselor observed A.V. grabbing a female student's buttocks, A.V. was suspended for an additional three days, and the District scheduled a Section 504 "Manifestation Determination" meeting for September 18, 2014.[4] In the meantime, on September 15, 2014, Plaintiff's mother sent the District a handwritten letter in English requesting that A.V. be assessed for eligibility for special education services. Thereafter, at the September 18, 2014 meeting, the District's psychologist told Ms. Varela, who again participated through a Spanish interpreter, that the District wanted to assess A.V. for special education (it appears that the psychologist was not aware of Ms. Varela's recent letter at that time). This was approximately twenty-two days following A.V.'s enrollment in the District for the 2014-15 school year. Consequently, while the District initially thought that A.V.'s behavior was not necessarily inconsistent with the behavior of many seventh grade boys adjusting to junior high school, within about three weeks it determined that he in fact needed to be further assessed for disability purposes.

After Defendant's mother told District staff that she thought A.V. did better with male teachers and counselors, the District recommended that A.V. transfer to Thompson Junior High School where more support from male staff members was available. Ms. Varela consented to that transfer.

///

---

[4] The purpose of a Manifestation Determination Hearing under the Rehabilitation Act is to determine whether the offending behaviors arise from the student's identified disability, here ADHD, as opposed to other sources.

A.V. began attending Thompson the following day, September 19, 2014. On September 22, 2014, school psychologist Brittany Gentry generated a "Consent for Assessment" of A.V.'s special education eligibility that included both a functional behavioral assessment and an evaluation of any emotional disturbance and specific learning disability. Ms. Gentry made that decision both because of Ms. Varela's concerns and because she believed A.V.'s numerous defiant and inappropriate behaviors made such an evaluation appropriate. According to the District, it mailed the Consent for Assessment to Ms. Varela at her address of record but it was not returned. The initial Consent form was generated in English because that was the language Defendant's mother had used in her written letter requesting a special education evaluation.

Nonetheless, in a subsequent Section 504 amendment meeting on October 7, 2014, which Ms. Varela attended, District Special Education Assistant Director Janet Clark claims she provided Plaintiff's mother with, and reviewed, a Spanish language version of the September 22, 2014 assessment. Ms. Clarke and school psychologist Matt Harper allegedly told Ms. Varela why the District wanted to perform an assessment of her son, explaining that an evaluation was needed before determining what additional supports and services A.V. might need.

Between August 21, 2015 and October 6, 2015, A.V. was suspended a total of six school days. Despite numerous efforts on the District's part to obtain Ms. Varela's consent to special education assessment, she did not sign the Consent form until January 6, 2015, nearly four months after the District initially requested it and on the first day of A.V.'s expedited OAH hearing.[5] Thereafter, the District undertook

---

[5] That hearing was scheduled after Ms. Varela, on November 21, 2015, filed an "expedited due process complaint" with regard to the discipline her son had received and the fact that Plaintiff's disabilities had not been adequately considered. An expedited due process complaint is made pursuant to 34 CFR §§ 300.530 and 300.532 and challenges, inter alia, discipline meted out to a disabled student that changes the student's placement. An expedited hearing can also be requested for a manifestation determination that the student's offending conduct was or was not caused by his or her disability. See 34 CFR § 300.530(e). A non-expedited complaint, on the other hand, may generally challenge the provision of a Free and Appropriate Public Education ("FAPE") to disabled students as guaranteed by the IDEA under 34 CFR §§ 300-507-300.516.

5

comprehensive assessments of A.V. and convened an IEP team meeting on March 2, 2015.  The team ultimately determined that A.V. qualified for special education and related services, under a primary disabling condition of emotional disturbance and a secondary disabling condition of other health impairment.

Because Ms. Varela's complaints included expedited elements that had to be adjudicated in short order, the expedited portions were determined first over a three-day hearing between January 6 and 8, 2015.  That decision is not the subject of the present appeal.  Instead, as indicated above, the District challenges certain findings made by the OAH during the course of the second, non-expedited hearing which took place over the course of three days between April 15, 2015, and April 17, 2015.

The non-expedited hearing adjudicated claims that the District had failed to timely assess A.V. in all areas of suspected need for special education placements, as well as claims that the District had deprived Ms. Varela of the opportunity to meaningfully participate in A.V.'s IDEA program by failing to translate disciplinary documents into Spanish.  The hearing took place over the course of three days between April 15, 2015, and April 17, 2015.  The OAH's resulting decision, dated June 11, 2015, was in A.V.'s favor to the extent the hearing officer concluded that the District had sufficient information between August 18, 2014,and October 6, 2014, to trigger its duty to assess A.V. for special education eligibility.  Even though A.V. did not begin classes until August 18, 2014, the hearing officer opined that because Ms. Varela had told District personnel that A.V. had previously been expelled from the BCSD for sexual battery, and because A.V.'s aggressive and defiant behaviors manifested almost immediately, a duty to assess was triggered from the onset.  Moreover, because the District did not provide a copy of the Consent form to Defendant's mother in Spanish until October 7, 2014, its failure to properly assess continued until the preceding day, October 6, 2014.  Nonetheless, given Ms. Varela's repeated failure to return the Consent form in a timely fashion once it had been provided to her as delineated above, the hearing officer found that no IDEA child-find obligation was breached after October 7, 2014.  In addition, the

hearing officer rejected A.V.'s claim that the District had to translate all disciplinary documents from A.V.'s cumulative file for Ms. Varela, or to provide Ms. Varela written explanations in Spanish for each disciplinary event, in order to ensure her meaningful participation in the IDEA process.

On August 28, 2015, A.V. filed a First Amended Complaint ("FAC") in the Related Case which appealed, in addition to the OAH's January 23, 2015 decision as well as December 10, 2014 sanctions order, also the OAH's June 11, 2015 decision on the non-expedited portions of Plaintiff's claim.[6] Thereafter, on September 8, 2015, the District filed the present appeal. As indicated above, the District now moves for summary judgment on grounds that the hearing officer erred in finding that the District violated its child-find obligations between August 18, 2014 and October 6, 2014.

## STANDARD

In adjudicating an appeal from an administrative decision regarding the rights of students with disabilities, the court is charged with receiving the record of the administrative proceeding which, in essence, forms the undisputed facts of the case. Though not a "true" motion for summary judgment, the appeal of an IDEA-based due process hearing decision is properly styled and presented by the parties in a summary judgment format. Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995). "[T]he procedure is in substance an appeal from an administrative decision not a summary judgment." Id.

The standard for district court review under the IDEA is set forth in 20 U.S.C. § 1415(i)(C), which provides as follows:

///

///

---

[6] The FAC does not purport to appeal the OAH's January 11, 2015 decision on Plaintiff's expedited claims, despite the fact that Plaintiff's original complaint challenged that decision.

> In any action brought under this paragraph the court--
> (i) shall receive the records of the administrative proceedings;
> (ii) shall hear additional evidence at the request of a party;
> and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that "due weight" be given to the administrative proceedings. Anchorage School Dist. v. M.P., 689 F.3d 1047, 1053 (9th Cir. 2012); Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). The amount of deference so accorded is subject to the court's discretion. Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987). In making that determination, the thoroughness of the hearing officer's findings should be considered, with the degree of deference increased where said findings are "thorough and careful". Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995), citing Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." Capistrano, 59 F.3d at 891.

Because of the deference potentially accorded the administrative proceedings, complete *de novo* review is inappropriate. Anchorage School Dist. v. M.P., 689 F.3d at 1053.; Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 887 (9th Cir. 2001). Instead, the district court must make an independent judgment based on a preponderance of the evidence and giving due weight to the hearing officer's determination. Capistrano, 59 F.3d at 892. After such determination, the court is free to accept or reject the hearing officer's findings in whole or in part. Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1473-73 (9th Cir. 1993).

While the petitioning party bears the burden of proof at the administrative level, Schaffer v. Weast, 546 U.S. 49, 57 (2005), the party challenging an administrative decision in federal district court has the burden of persuasion on his or her claim. Clyde K. v. Puyallup Sch. Dist. No. 3, 35 F.3d 1396, 1399 (9th Cir. 2004).

///

**ANALYSIS**

Both the IDEA and related California law require local educational agencies, including school district, to identify, locate and evaluate all children with disabilities up to 21 years of age. This obligation is commonly referred to as the "child-find" requirement. Courts generally agree that districts must identify and evaluate such children within a "reasonable time." See, e.g., D.R. v. Antelope Valley Union High School Dist., 746 F. Supp. 2d 1132, 1144 (D.C. Cal. 2010; W.B. v. Matula, 67 F.3d 484, 501 (3rd Cir. 1995). Children who are assessed and found to be eligible for assistance are entitled to a "free appropriate public education ["FAPE"] which encompasses special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living." 20 U.S.C. § 1400(d)(1)(A); 34 C.F.R. § 300.1(a).

The Ninth Circuit has yet to articulate any bright-line standard for how much time a school district should reasonably be accorded in working with and observing students in a regular education setting before being obligated to refer students for special education assistance. The Third Circuit, however, has cautioned that evaluation within a "reasonable period of time" does not require that a district "rush to judgment or immediately evaluate every student exhibiting below-average capabilities…." D.K. v. Abington School Dist., 696 F.3d 233, 252 (3rd Cir. 2012). There is no consensus on how long this process should take—cases examining the issue have found a period of weeks, or even months to be reasonable under the circumstances. W.A. & M.S. v. Hendrick Hudson Central School Dist., 2016 WL 6915271 (S.D. N. Y. 2016) (10 weeks was reasonable); Dept. of Ed., State of Hawaii v. Cari Rae S., 158 F. Supp. 2d 1190, 1195-97 (D. Hawaii 2001) (six months reasonable); El Paso Independent School Dist. v. Richard R., 567 F. Supp. 2d 918, 952 (thirteen months reasonable).

In the present matter, by finding that the District had a child-find obligation with regard to A.V. beginning on August 18, 2014, the hearing officer determined that that

obligation commenced the very first day of school, despite the fact that District staff had not yet had any opportunity whatsoever to observe A.V.'s behavior, and had not yet even received his prior academic records from the BCSD. That finding, in essence, deprived the District of any right to implement general education interventions on its own. The District contends that this runs counter to California law, which prohibits school districts from making special education referrals until after the districts consider, and where appropriate, utilize the resources of their own general education programs. Cal. Ed. Code § 56303. Moreover, according to the District, requiring it to make a decision as to special education eligibility at the onset of a student's enrollment could interfere with its concurrent obligation to educate disabled children in the so-called "least restrictive environment" mandated by both federal and state law. 20 U.S.C. § 1412(a)(5); Cal. Ed. Code § 56040.1. Instead, forcing a decision to be made immediately would entail just the "rush to judgment" rejected by the case law. See D.K. v. Abington School Dist., 696 F.3d at 249.

The Court agrees that the hearing officer committed error when she decided that the District's child-find obligation was triggered on August 18, 2014. The District was entitled, and even required, to make its own determination as to A.V.'s suspected disability once he enrolled as a student. The fact that A.V.'s previous district, the BCSD, had developed a Section 504 plan does not equate with a finding that A.V. needed special education. Students with Section 504 plans continue to access the general education curriculum by way of the accommodations contained in those plans; there is no requirement that a student entitled to Section 504 assistance need special education. Special education under the IDEA, on the other hand, is provided to a child who meets the criteria of one or more specific disabling conditions and who also, because of the condition or conditions, needs special education and related services. 20 U.S.C. 1401(3)(A); Cal. Ed. Code § 56026. Therefore, any claim that A.V. needed special education by virtue of his Section 504 placement alone, or because he had been diagnosed with ADHD as a basis for that placement, is incorrect.

In addition, since A.V.'s prior school records from the BCSD were not obtained until September 5, 2014, the District could not have been on notice of anything contained in those records until that time, at the very earliest. Nevertheless, examination of the records themselves is hardly dispositive. While there is an indication that A.V. may have been subject to expulsion for sexually assaulting another student, the records also show that BCSD evaluated A.V. for special education services and decided he did not qualify after testing and subsequent assessment indicated that continued placement in the general educational curriculum was appropriate.

Significantly, too, it must be emphasized that the District attempted various intervention techniques between the time of A.V.'s enrollment on August 18, 2014, and the time it decided, exactly a month later, that A.V. needed to be assessed for special education purposes. It conducted several informal meetings with Ms. Varela, held Section 504 meetings along with revisions to A.V.'s Section 504 and behavior support plans on August 27, September 11 and October 2, 2014, and ultimately agreed to A.V.'s transfer to another school within the District where he would have more access to male staff. It also provided Ms. Varela with a Consent for Assessment on August 18, 2014 in English, since that was the language Ms. Varela herself used in sending a letter requesting special education assessment herself some three days previously. Then, after Ms. Varela failed to return the Consent form, the District provided additional copies to Ms. Varela in both English and Spanish on October 7, 2014. Despite these attempts, and a number of others which occurred during the course of subsequent months, Ms. Varela still did not return the assessment consent until January 6, 2015, well over three months after she requested assessment and after the District requested her consent for the testing that entailed. The District could not proceed with assessment of A.V's eligibility for special educational services without Ms. Varela's consent.

Finally, and perhaps most importantly, the District was entitled to draw its own conclusions about whether A.V. needed to be assessed based upon its own observations and those of its staff. This is particularly true given the fact that A.V.'s prior

district, the BCSD, had not determined him to be in need of special education and related services.  The District was not remiss in attempting to get to know A.V., and engaging in other intervention techniques like suspension and a behavior contract, before deciding that A.V.'s problems exceeded those of a mainstream student and merited special education assessment.   The thirty-day period that the District took to make that decision (between the time he was enrolled on August 18, 2014 and the time it provided a Consent for Assessment to Ms. Varela a month later, on September 18, 2014) was not unreasonable.  Nor was it unreasonable for the District to have initially provided the requisite Consent form to Ms. Varela in English, given the fact that she wrote to the District in English herself just three days previously, on September 15, 2014, to request assessment on her son's behalf.

## CONCLUSION

Based on a preponderance of the evidence after giving due deference to the hearing officer's determination, the Court concludes that the District did not violate its "child-find" obligation to A.V. between August 18, 2014 and October 6, 2014.  The hearing officer's findings to the contrary were erroneous, and the District is entitled to summary judgment reversing that decision.  The District's Motion (ECF No. 24) is thus GRANTED, and the Clerk of Court is accordingly directed to enter judgment for the District.  Additionally, since this concludes the present matter, the Clerk is also directed to close the file.

IT IS SO ORDERED.

Dated:  December 4, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE